# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| **ORVAL DEWEY TANNER**, | ) | Civil No.: 5:10cv00084 |
| *Plaintiff*, | ) | |
| v. | ) | **REPORT AND** |
|  | ) | **RECOMENDATION** |
| **MICHAEL ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | |
|  | ) | By: Hon. James G. Welsh |
| *Defendant* | ) | U. S. Magistrate Judge |

Orval Dewey Tanner brings this action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

His application was filed on August 6, 2007. (R11,103-110,125). Consistent with his alleged disability onset date, the plaintiff's medical records document his involvement in a motorcycle accident on May 29, 2007 and his having sustaining a significant thoracic spine fracture with attendant spinal cord compression and a left eye vitreous hemorrhage. (R.129,203-204,240-243,254-258,298,324-327). In a later disability report to the agency, the plaintiff additionally reported experiencing daily headaches and depression. (R.159,162). His application

was rejected at all levels of the administrative process, including by written administrative law judge ("ALJ") decision dated December 29, 2009. (R.11-24,25-49,50-65-95). With the Appeals Council's denied of his subsequent review request (R.1-7), the ALJ's decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his Answer to the plaintiff's Complaint, the Commissioner filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on January 4, 2011 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and each has also been heard at oral argument.

### I. Summary

Using the agency's five-step decisional process, the ALJ at the first step determined that the plaintiff had not engaged in substantial gainful work activity since being injured in a motorcycle accident on the alleged disability onset date. At step two, it was determined that the plaintiff's spinal cord injury, spinal fracture, and visual limitations were *severe* [1] impairments. At the third decisional step the ALJ found that none of these impairments met or medically

---

[1] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. §§ 404.1520(c).

equaled an impairment listed in 20 U.S.C. pt. 404, subpt. P, appx. 1. At step four, he concluded that the plaintiff was not capable of performing any of his past relevant work. And at the final decisional step on the basis of his review of the entire record, including but not limited to the plaintiff's vocational profile and the vocational testimony, the ALJ concluded that the plaintiff retained the functional ability to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a).

On appeal the plaintiff assigns error to the ALJ's step-three finding that his back condition was not of listing-level, to the ALJ's step-five non-disability finding, and to the Appeals Council's failure vacate the decision and remand his case on the basis of additional evidence he submitted.

Based on a thorough review of the administrative record and for the reasons outlined hereinafter, both of the plaintiff's principal claims of administrative error merit vacation of the Commissioner's final decision and a remand of the case to the agency pursuant to Sentence Six of 43 U.S.C. § 405(g).

## II. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by

3

substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (quoting *Craig v. Chater*, 76 F.3$^d$ at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

### III. Evidence Summary

At the time the plaintiff's alleged his disability began, he was thirty-six years of age. (R.18,125). He had a high school education; however he testified that he "couldn't read very good." (R.32). His past work was doing building maintenance, which was medium in exertional level. (R.46,186).

4

The plaintiff was injured on May 29, 2007 in a motor cycle accident. When seen in the emergency room at Warren Memorial Hospital, he was noted to be in acute distress with injuries to his back and face. (R.254-257,267). Preliminary findings showed that he had sustained a paraspinal hematoma from the level of T/2 through T/5, a spinal fracture involving the left lamina at T/2 with mild displacement, and a severe comminuted fracture involving both the T/3 and T/4 vertebral bodies. (R.265). After determining that he was in need of acute trauma care, the plaintiff was transferred and admitted to the Winchester Medical Center ("WMC") for evaluation of his injuries by its trauma care team. (R.268,272). Upon evaluation at WMC the plaintiff was determined to have sustained a T/3 burst fracture, a T/4 anterior wedge compression fracture with some attendant impingement of the spinal cord, a small pulmonary contusion, a number of broken teeth, multiple facial lacerations and abrasions, and a metallic object embedded in each of his upper eye lids. (R.264-265,297-299,309-321). Both metallic objects were surgically removed. (R.298-299). After his medical condition was further stabilized and following a neurosurgery evaluation, the plaintiff elected to have the necessary back surgery performed by physicians at the Virginia Back Institute. (R.297,300-302; *see also* R.400).

On June 4, 2007, therefore, he was transferred to Reston Hospital, and on the same day Michael Hasz, M.D., performed the necessary spinal surgery, which including thoracic laminectomies at T/3 and T/4, a partial T/3 vertebrectomy, placement of a prosthetic intervertebral device at T/3-4, and multiple spinal fusion procedures from T/1 through T/6-7. (R.205-208,215-217,297). His post-operative course was uneventful. He was gradually

5

mobilized, fitted with a back brace, seen by an ophthalmologist, [2] dental and oral surgery consultants, and noted to improve his activities gradually. (R.203,218-229, 372). On June 20, 2007 he was discharged and transferred to WMC for inpatient rehabilitation therapy. (R.203,272-292). By the time he was discharged to home by WMC three weeks later, his bowel and bladder functions had returned; he needed minimal assistance to bathe; he was able to ambulate 300 feet with the use of a walker and back brace; he demonstrated good cognition, and he reported being pleased with his progress and overall improvement. (R.279-283; *see also* R.392,394). He remained unable to work or to drive; he was scheduled for home health care services, and he was advised to see Dr. Hasz for orthopedic follow-up and Kenneth Parker, M.D., for rehabilitation follow-up. (R.273,279-283,294).

As Dr. Hasz' office note of February 25, 2008 shows, nine months after surgery the plaintiff's spinal fusion had healed "quite well;" he was able to sit comfortably in a chair; he had full muscle strength in his upper and lower extremities; he was able to walk with a slightly broad-based gait using a cane; he was able to stand on his toes using a cane; however, his lumbar range of motion remained significantly restricted, and he continued to use Neurontin for neuropathic pain. (R.374-377,431-432; *see also* R.378-394). Dr. Hasz concluded that the plaintiff could be released to Dr. Parker for primary care and could return for any additional orthopedic care on an as needed basis. (R.375,377,432).

---

[2] The ophthalmology examination disclosed a non-clearing vitreous hemorrhage in the plaintiff's left eye and an associated vitreous detachment. (R.372)

6

When seen by Dr. Parker three days later, the plaintiff reported some continuing leg pain, weakness, numbness and spasm, and he reported that his vision was slightly better. [3] (R.445). On examination, Dr. Parker found "mild" tenderness and spasm in the upper thoracic spine area, "mild" lower extremity weakness, "slightly" reduced touch sensation in his feet, and no evidence of any lower extremity spasm. (*Id.*). Dr. Parker also noted that the plaintiff walked slowly using a cane and would need to be seen for laboratory testing and further evaluation at three-month intervals. (*Id.*). In the same outpatient record Dr. Parker also recorded his "impression" was that the plaintiff remained disabled and would likely take two years to reach maximum recovery. (*Id.*).

When seen three months later in June 2008, Dr. Parker's outpatient note suggests no significant change in the plaintiff's condition. At that time he reported that he was taking no pain medications, was unable to engage in any physically stressful labor, was continuing to use a cane for ambulation, and that his vision was unchanged. (R.447). On examination, Dr. Parker found no swelling or acute change in the plaintiff's condition, and he remained of the opinion that the plaintiff should not attempt to drive. (R.447).

Dr. Parker's September and December 2008 and his March, June 2009 and November 2009 outpatient notes, likewise, suggest no negative change in the plaintiff's condition. (R.451,453,456,457,465). Suggesting instead some functional improvement, Dr. Parker's year 2009 office notes record the plaintiff's ability to drive, his stability both with and without the use

---

[3] An eye examination on September 19, 2007 recorded the plaintiff's vision as 20/30 in the right eye and 20/40 in the left eye. (R.369-371).

of a cane, his "mild[ly] increase[d] leg tone," and his discontinuance of any orthopedic care. (R.451).

In response to a November 2008 inquiry by Met Life Disability, Dr. Parker opined that the plaintiff's limited reading ability would make him effectively unable to do desk work, that his injury-related residual pain and lower extremity discomfort would limit him to sitting for only short periods of time, and that he "d[id] not feel" the plaintiff would benefit from vocational rehabilitation services. (R.434). One year later, in his response to a detailed functional questionnaire, Dr. Parker essentially reiterated the same opinion and explained that his assessment of the plaintiff's functional limitations was based on his clinical findings over a significant longitudinal period and the plaintiff's chronic pain and persistent bilateral lower extremity stiffness and weakness. (R.458-462,467-471). *Inter alia*, Dr. Parker also indicated that the plaintiff was mentally stable and could tolerate moderate work stress. (R.459,468).

In contrast to Dr. Parker's functional assessment, a non-treating, non-examining state agency medical reviewer in October 2007 concluded that within twelve months of his injury the plaintiff could be expected to have a residual functional capacity to perform work at a light exertional level that required only occasional postural movements. (R.358-363). Nine months later, in July 2008 during the reconsideration process an assessment by a second state agency medical reviewer concluded that the plaintiff's residual functional capacity would only permit him to perform work at sedentary level of exertion that required only occasional postural movements. (R.417-423).

Also in the administrative record are four exhibits submitted to the Appeals Council. (R.4,463-488). Exhibit 19F (R.463-465) is a duplicate of Exhibit 18F that had been previously submitted for consideration by the ALJ. Exhibit 20F consists of two office notes from Dr. Parker's office, one dated November 12, 2009 and the other dated February 12, 2010; neither suggests any significant change in the plaintiff's medical condition. (R.198,464-465). Exhibit 21F (R.473-477) is a vocational evaluation dated January 27, 2009 by Gerald Wells, Ph.D., and Exhibit 22F (R.479-488) is a psychological evaluation dated December 22, 2009 by Sarika Garga, Ph.D.

### IV. Discussion of Issues

#### A.

Pointing to the nature and extent of his acute spinal injury, to the well-documented attendant spinal cord compromise and to the medical record, including Dr. Parker's responses to the functional capacity questionnaire (R.467-471), the plaintiff argues that his spinal disorder meets or medically equals the alternative criteria of listing 1.04(A) and (C). In essence, he contends that the neuro-anatomic distribution of his pain and other limitations demonstrate the requisite level of spinal cord compromise necessary to meet the criteria of paragraph A and that it similarly demonstrates the spinal nerve root pressure and resulting pseudoclaudication (interference with movement and sensation in his lower extremities) that causes an inability to ambulate effectively are consistent with the criteria of paragraph C.

In making his contrary finding, the ALJ took note generally of the requirements necessary for a disability finding under listing 1.04, and in a single sentence stated that the medical evidence "confirmed" the absence of the necessary findings. (R.14). In this section of his decision the ALJ makes no reference to the neurosurgery findings or to the related radiographic studies. Similarly, he makes no reference to Dr. Hasz's or Dr. Parker's treatment notes, and there is no indication of any relevant consideration of Dr. Parker's functional assessment.

Without a sufficient explanation of his rationale for finding that the plaintiff's spinal impairment did not meet listing 1.04(A) or (C) and, more importantly, without a comparison of the plaintiff's symptoms with the criteria of listing 1.04(A) and (C) it is "simply impossible for the court to tell whether there is substantial evidence to support the ALJ's determination. *See Cook v. Heckler*, 783 F.2$^d$ 1168, 1173 (4th Cir. 1986). Accordingly, substantial evidence does not support the finding that the plaintiff is not disabled, and the Commissioner's final decision should be vacated and the case remanded for further consideration.

**B.**

The plaintiff's contention that the Appeals Council failed to make the necessary review of his post-hearing submissions equally requires a remand in this case. In addition to acknowledging receipt of these post-hearing submissions, including the results of a comprehensive consultive psychological evaluation by Dr. Sarika Garga (R479-488) and the similarly comprehensive vocational evaluation by Dr. Gerald Wells, the Appeals Council also

10

reported its "consideration" of this evidence, [4] and its determination that this evidence "d[id] not provide a basis for changing the [ALJ's] decision." (R.1-2,5).

Pursuant to the Fourth Circuit's holding in *Wilkins v. Sec'y, HHS*, 953 F.2$^d$ 93 (4th Cir. 1991) the Appeals Council is required to take into account additional evidence submitted to it, only "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins* 953 F.2$^d$ 95-96; *see* 20 C.F.R. § 404.970(b). Evidence is new if it is neither duplicative nor cumulative. *Wilkins,* 953 F.2$^d$ at 96. And it is material only "if there is a reasonable possibility that the new evidence would have changed the outcome." *Id*.; 20 C.F.R. § 404.970(b).

A review of both Dr. Garga's and Dr. Wells' consultive evaluations, their observations, their examination findings, and their opinions shows that each is clearly "new." Each offers new insight into the plaintiff's functional limitations. Each is detailed, comprehensive and indicates an understanding of disability determination issues. Each appears to be consistent with other substantial evidence in the record. Each suggests a very reasonable possibility it would change the ALJ's decision; each is non-conclusory in nature, and each relates to the period on or before the date of the ALJ's decision. *See Wilkins*, 953 F.2$^d$ at 95.

---

[4] Since the Appeals Council considered this evidence in deciding not to grant review, (R.1-5), this court is obligated consider it in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y,HHS,* 953 F.2$^d$ 93, 96 (4th Cir. 1991).

11

In summary, the nature and content of these two post-hearings submissions and the absence of any substantive action by the Appeals Council either the grant the plaintiff's request for review or the return of his claim to the ALJ for further proceedings require a remand pursuant to Sentence Six of 42 U.S.C. § 405(g)

## V. Proposed Findings

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not support the finding that the plaintiff's condition did not meet or equal the listing 1.04's impairments;

2. Substantial evidence does not support the Commissioner's non-disability finding;

3. The absence of any substantive comment or action by the Appeals Council after receipt of the consultive psychological and vocational evaluations by Dr. Garga and Dr. Wells respectively make vacation of the Commissioner's final decision and remand both necessary and appropriate;

4. The evidence upon which the plaintiff relies in seeking remand is new and material;

5. Outright reversal and remand simply for the calculation and award of benefits is not appropriate in this case because additional fact-finding is necessary in order to establish the extent of the plaintiff's disability and attended functional limitations; and

6. The final decision of the Commissioner should be reversed and the case remanded pursuant to **Sentence Six** of 42 U.S.C. § 405(g) 4 for further consideration consistent with this Report and Recommendation and, if necessary, for further development of the record.

## VI. Recommended Disposition

The undersigned recommends that both the plaintiff's and the Commissioner's motions for summary judgment be DENIED, the Commissioner's final decision denying benefits be VACATED, and the claim be REMANDED pursuant to Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendation.

Should the remand of this case result in the award of benefits, plaintiff's counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) within which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; provided, however, any such extension of time would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific

objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 6th day of January 2012.

    /s/   *James G. Welsh*
United States Magistrate Judge