IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ORVAL DEWEY TANNER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 5:10cv084 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | )     United States District Judge |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal is before the court for review of the Report and Recommendation issued in this case by the magistrate judge on January 6, 2012. In that Report and Recommendation, the magistrate judge recommended that this case be remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) for further consideration. The court agrees with the magistrate judge's recommendation that remand is appropriate here. However, for the reasons stated herein, the court finds the proper avenue for remand to be pursuant to sentence four, rather than sentence six, of 42 U.S.C. § 405(g). As such, an Order will be entered adopting the magistrate judge's opinion in part, rejecting it in part, and remanding this case pursuant to sentence four.

### I.

This matter was referred to the magistrate judge on January 4, 2011 for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties filed cross motions for summary judgment and supporting memoranda. The magistrate judge held oral argument on September 12, 2011, and both parties subsequently submitted supplemental briefs. The magistrate judge issued his Report and Recommendation on January 6, 2012.

Under 28 U.S.C. § 636(b)(1), the "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Federal Rule of Civil Procedure 72(b) gives the parties an opportunity to file written objections to the proposed findings and recommendations, but neither party filed objections in this case. Rule 72(b)(3) provides that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." While the text of the rule is silent as to the obligation of the court if no objection is made, the advisory committee notes that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974)). In Thomas v. Arn, 474 U.S. 140 (1985), the Supreme Court had occasion to address the issue, and stated as follows:

> The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

474 U.S. at 154. Thus, even absent an objection, the court retains the ability to review sua sponte a magistrate judge's report and recommendation. The court believes that the particular facts of this case present an appropriate occasion to review the magistrate judge's Report and Recommendation notwithstanding the absence of an objection.

## II.

Plaintiff Orval Dewey Tanner ("Tanner") presents a number of arguments in his social security disability appeal. One of those arguments, which was not addressed by the magistrate

judge in his Report and Recommendation, is that the administrative law judge ("ALJ") erred in finding Tanner has the residual functional capacity ("RFC") for sedentary work given the disability opinion of his treating rehabilitation specialist, Dr. Parker. For the reasons set forth below, this argument warrants remand.

Tanner was injured in a significant motorcycle accident on May 29, 2007, which left him with an unstable T3 burst fracture, T4 burst fracture, T3-4 disc hernitation, thoracic stenosis and kyphosis, and a contusion of the spinal cord at the upper thoracic level. He also suffered multiple lacerations, broken teeth, a subconjunctival hematoma on the right side of the eye, and multiple rib fractures. Following extensive spinal surgery performed by Dr. Michael Hasz, which included an interbody fusion at T3/4 and posterior instrumentation at TI through T7, Tanner began treating with Dr. Parker in June 2007. (R. 467.) Dr. Parker remained Tanner's primary treating physician throughout his recovery process. (R. 34-35.)

Dr. Parker filled out a Physical Residual Functional Capacity Questionnaire on November 16, 2009 indicating Tanner suffers from stiffness, weakness and pain in his legs, as well as stiffness and pain in his thoracic spine. (R. 467.) Dr. Parker noted that Tanner has grade G minus strength in his legs and needs a cane to ambulate, that he has mild increased tone in his legs, and that he has limited range of motion in his thoracic spine. (R. 467.) Dr. Parker opined that Tanner can sit less than two hours and stand/walk less than two hours in an eight hour day. (R. 469.) Specifically, Dr. Parker stated Tanner could sit only 20 minutes at a time before needing to get up and stand 15 minutes at a time before needing to sit down or walk around. (R. 468.) Dr. Parker opined Tanner would need to walk around every 45 minutes for a minute or so, and that he would need a job that permitted him to shift positions at will from sitting, standing or walking. (R. 469.) Dr. Parker noted Tanner needs to use a cane while standing/walking, and that he can never lift even less than 10 pounds. (R. 469.) He further

opined that Tanner would need to miss more than four days of work per month as a result of his impairments or treatment. (R. 470.)

A treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."). In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527(d).

In her decision, the ALJ stated that she had evaluated Dr. Parker's RFC questionnaire and found his opinions to be inconsistent with his own treatment notes. She continued:

> Specifically, [Dr. Parker's] notes reveal that the claimant has progressed in healing and has the ability to drive and has stable gait with or without a cane. In addition, the doctor's opining that the claimant is completely disabled is an issue reserved for the Commissioner. Moreover, although the doctor indicated that the claimant is disabled, it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations. Specifically, it is possible that the doctor was referring solely to an inability to perform the claimant's past work, which is consistent with the conclusions reached in this decision. Finally, the limitations set forth in the form, and his multiple opinions, are not consistent with the evidence as a whole. Therefore, the undersigned gives Dr. Parker's opinions little weight.

(R. 18.) The ALJ is correct in noting Tanner progressed in his healing. Indeed, over the course of his treatment, Dr. Parker notes Tanner is "making good progress and is gradually improving." (R. 437.) There are references to Tanner's participation in physical therapy and pool therapy. By October of 2007, notes reveal Tanner no longer needed to use his back brace except on long trips. (R. 442.) Examination revealed grade G strength of the legs. (See, e.g., R. 414.) Dr. Parker noted in June 2008 that Tanner was not taking any pain medication. However, it is unclear whether this was because Tanner no longer needed pain medication or because he could not afford further medication.[1] It appears to be the latter; the treatment note mentioned Tanner's health insurance had expired and that he had run out of Percocet. (R. 414.) As of February 2010, Tanner was taking medication for pain and spasms intermittently. (R. 464.) Notes reveal Tanner was able to drive as of November 2009, but Dr. Parker cautioned Tanner about driving given his pain medications. (R. 464, 465.)

Notwithstanding Tanner's documented progression, it is made plain by Dr. Parker's records that Tanner "does have a variety of problems due to spinal injury," (R. 442), including some neurological dysfunction. (R. 416.) There are consistent references to Tanner having reduced light touch & pinprick sensation in the feet (R. 414, 435, 464, 465), mild to moderate tenderness and spasm of the right and left upper thoracic musculature (R. 414, 435, 442), mild clonus at the ankles (R. 435, 442), mild paraparesis (R. 442), and chronic pain and increased muscle tone in the legs. (R. 435, 442, 451, 464, 465.) Tanner complained multiple times of weakness, numbness, swelling, burning and stiffness in his back and legs, and Dr. Parker noted Tanner needed medication for control of tone and pain. (R. 464.) Dr. Parker noted that Tanner "[a]mbulates better with a cane," (R. 451), and required a cane for stable ambulation. (R. 414,

---

[1] The treatment notes contain a number of references to Tanner deferring diagnostic studies to a later date due to his lack of health insurance and financial situation. (See, e.g., R. 414, 453, 464.)

435, 441.) Tanner's "[a]bility to tolerate heat and perspire" was also affected by his spinal cord injury, per Dr. Parker. (R. 451; see also R. 464.) And Tanner had to undergo regular monitoring of his kidneys and bladder.

This much is certainly true: Dr. Parker consistently stated in his records that Tanner could not work. (R. 414, 415, 416, 434, 435, 437, 440, 443, 453, 456, 464, 465.) At one point in November 2007, Dr. Parker noted that Tanner's surgeon Dr. Hasz also had stated Tanner was permanently disabled and that Tanner "needs to check with Dr. Hasz to get limitations in function." (R. 449.) Dr. Hasz stated in his notes from November 2007 that Tanner was "limited in job capacity as he has always been unable to read or write beyond the third grade level," and that "he likely is not appropriate for light duty job unless it requires supervision of others doing jobs in which he has expertise." (R. 379.) A few months earlier in September 2007, Dr. Hasz had stated: "At this time I do not think he is ready to return to work. He will work with Dr. Parker for rehab as well. I consider him still disabled from his previous job at this time. I will defer this to Dr. Parker."[2] (R. 386.) It appears Dr. Hasz "deferred any further care [of Tanner] to Dr. Parker" as of February 25, 2008. (R. 375.)

Addressing Dr. Parker's statements of disability, the ALJ stated, "it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations. Specifically, it is possible that the doctor was referring solely to an inability to perform the claimant's past work, which is consistent with the conclusions reached in this decision." (R. 18.) But this "possibility" that Dr. Parker was referring only to Tanner's inability to perform his past relevant work is not borne out in the records. On his RFC questionnaire dated November 16, 2009, Dr. Parker indicated specifically how long he felt Tanner could sit,

---

[2] What appears to be a form pertaining to the Family Medical Leave Act and signed by Dr. Hasz is found in the record, although it is not dated. Dr. Hasz indicated on this form that Tanner is "unable to work until follow up appointment" and that he is "off work for at least 3 months." No specific functional limitations are identified. (R. 396-97.)

stand, and walk during an eight hour day, taking Tanner out of all competitive work, not just his past relevant work that was performed at the medium level. (R. 471.) Additionally, in a letter addressed to Tanner's disability carrier dated November 5, 2008, Dr. Parker stated Tanner "would not be able to participate in vocational rehabilitation on a full time basis to be retrained for sedentary to light work. I do not feel he can do training because he cannot read well." (R. 434.) Dr. Parker went on to state Tanner reads at a third grade level, cannot sit longer than 10 to 15 minutes before needing to get up and move, and that he "notes significant increased pain and must sit or lay down again for short periods of time once up." (R. 434.) Dr. Parker concluded by stating Tanner is "severely restricted in activity, and I do not feel would benefit from vocational rehabilitation services." (R. 434.) Dr. Parker clearly speaks to Tanner's ability to participate in any type of work, not just his past relevant work, in this letter.

It is not the province of a federal court to make administrative disability decisions. The court's job is to determine whether substantial evidence supports the Commissioner's disability decision. To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than

a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The record simply does not support the ALJ's theory that Dr. Parker "was referring solely to an inability to perform the claimant's past work" when he opined, repeatedly, that Tanner cannot work. Dr. Parker was Tanner's primary treating physician during his recovery from a significant spinal injury. Throughout the record, and even as recently as February 2010, Dr. Parker stated that Tanner is unable to work. Dr. Parker based his disability opinion on his "present analysis of the case and review of the files." (R. 456.) Given this record, the court cannot say that the ALJ's decision is supported by substantial evidence. Remand for further consideration of Dr. Parker's opinion is therefore appropriate.

### III.

Consistent with the magistrate judge's opinion, the court also finds it appropriate to remand this case in light of the consultative mental evaluation from Dr. Sarika Garga. According to the evaluation report, Tanner was referred to Dr. Garga by Disability Determination Services (DDS) "for a mental status evaluation to assist in determining eligibility for Social Security Disability Benefits." (R. 479.) Yet there is no mention of Dr. Garga's evaluation anywhere in the ALJ's opinion. Dr. Garga's report is dated December 22, 2009; the ALJ's decision was issued December 29, 2009. This consultative mental evaluation was plainly not considered by the ALJ. It does not appear to be included in the evidence that was before the ALJ, appearing instead on the list of exhibits submitted to the Appeals Council.[3] The Appeals

---

[3] In determining whether substantial evidence supports the Commissioner's decision, the court must review the record as a whole, including any new evidence that the Appeals Council incorporated into the administrative record. Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

Council ultimately denied Tanner's request for review.[4]

When deciding whether to grant review, the Appeals Council must consider evidence submitted to it, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is new if it is not duplicative or cumulative. Id. at 96. Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96. Dr. Garga's report satisfies these requirements. As such, remand is appropriate.

Dr. Garga's report is certainly new evidence, in that it is not duplicative or cumulative. No other such consultative mental evaluation appears in the record. Dr. Garga's report offers insight into the extent of Tanner's non-exertional limitations. Specifically, Dr. Garga's report indicates Tanner had a full scale IQ of 82, placing him in the low average range. His working memory and processing speed were reported to be extremely low. (R. 484-85.) His reading was noted to be at a third grade level. His understanding of sentences was at a fifth grade level, and his spelling at a second grade level. (R. 486.) Dr. Garga diagnosed Tanner with adjustment disorder with depressed mood and a reading disorder, and pegged his global assessment of functioning (GAF)[5] score at 52. (R. 487.)

---

[4] In his Report and Recommendation, the magistrate judge found: "The absence of any substantive comment or action by the Appeals Council after receipt of the consultive [sic] psychological and vocational evaluations by Dr. Garga and Dr. Wells respectively make vacation of the Commissioner's final decision and remand both necessary and appropriate." Report & Recommendation, Dkt. # 24, at 12. The court notes that the Fourth Circuit recently held in Meyer v. Astrue, 662 F.3d 700, 706 (2011), that the Appeals Council need not provide any substantive comment or explain its reasoning. Rather, the Fourth Circuit held "the regulatory scheme does not require the Appeals Council to do anything more than what it did in this case, i.e., 'consider new and material evidence . . . in deciding whether to grant review.'" Id. (citing Wilkins, 953 F.2d at 95).

[5] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000) (hereinafter "DSM-IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV-TR at 34.

Given the fact that DDS found it appropriate to refer Tanner for a mental consultative evaluation "to assist in determining eligibility for Social Security Disability Benefits," (R. 479), the court finds it difficult to say this evidence is not material. And it certainly relates to the period on or before the ALJ's decision. At the end of the day, the evaluation from Dr. Garga may not change the Commissioner's decision. But there is a reasonable possibility that it might have impacted the ALJ's consideration of Tanner's non-exertional limitations. DDS believed a consultative mental evaluation was necessary for a determination of whether Tanner is entitled to disability benefits, and Dr. Garga's report ought to have been considered by the Commissioner. The court agrees with the magistrate judge that this case should be remanded for consideration of Dr. Garga's consultative evaluation.

### IV.

Therefore, remand is appropriate in this case for proper consideration of Dr. Parker's opinion and Dr. Garga's consultative mental evaluation. Because the vocational evaluation of Gerald Wells, Ph.D., dated January 27, 2009,[6] relies on the opinion of Dr. Parker, the Commissioner also should give further consideration on remand to this evaluation. The Commissioner should consider whether Tanner meets or medically equals the requirements of Listing 1.04(A) and (C) as well, per the magistrate judge's recommendation.

In his Report and Recommendation, the magistrate judge recommends remand pursuant to sentence six of 42 U.S.C. § 405(g). See Report & Recommendation, Dkt. # 24, at 12. However, this case plainly warrants remand pursuant to sentence four, rather than sentence six, of 42 U.S.C. § 405(g). Congress outlined the remand powers of the district court in 42 U.S.C.

---

[6] Like Dr. Garga's opinion, Dr. Wells' opinion is not mentioned in the ALJ's decision issued December 29, 2009. Unlike Dr. Garga's opinion, however, Dr. Wells' opinion appears to have been included in the evidence before the ALJ, as it is found in Exhibit 12E of the record, in addition to Exhibit 21F submitted to the Appeals Council. (R. 192-96.) At the administrative hearing, the ALJ noted that Exhibits 1A through 18F were admitted into evidence and made part of the record. (R. 28.)

§ 405(g).  A "sentence four" remand is aptly named for the fourth sentence of § 405(g):  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A judgment affirming, modifying or reversing the Commissioner's decision must accompany a "sentence four" remand.  Melkonyan v. Sullivan, 501 U.S. 89, 99 (1991).  Sentence six, on the other hand, authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g).  As all evidence before the court has been incorporated into the record, even the new evidence presented to the Appeals Council, sentence six is inapplicable to the case at bar.

      To that end, an Order will be entered adopting in part and rejecting in part the Report and Recommendation of the magistrate judge.  The Order will reverse the decision of the Commissioner and remand this case pursuant to sentence four of 42 U.S.C. § 405(g) for further evidentiary development as set forth herein.

                                          Entered:  March 29, 2012

                                          /s/ Michael F. Urbanski
                                          Michael F. Urbanski
                                          United States District Judge